# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

STEPHEN B. LUONGO and STEVE        :
LUONGO'S TOWING, INC.,             :
                                   :    CIVIL ACTION
            Plaintiffs,            :
                                   :
      v.                           :
                                   :    NO.     15-4087
PENNSYLVANIA STATE POLICE,         :
TOMAS YATES, LOUIS G. VITALI,      :
JAMES P. RAYKOVITZ, ROBERT         :
REILLY, JUSTIN LANZA, DERRICK      :
WATFORD and ERIC J. TURK,          :
                                   :
            Defendants.            :

## MEMORANDUM

BUCKWALTER, S.J.                                      January 11, 2016

Currently pending before the Court is the Motion to Dismiss by Defendants Pennsylvania

State Police, Tomas Yates, Louis Vitali, James P. Raykovitz, Robert Reilly, Justin Lanza,

Derrick Watford, and Eric Turk (collectively, "Defendants") to Dismiss Plaintiffs' Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Motion is

granted and Plaintiffs are given leave to amend Count III of their Complaint.

## I.      FACTUAL BACKGROUND

According to the facts set forth in the Complaint, Plaintiffs Steve Luongo's Towing, Inc.

("Luongo Towing") and Stephen Luongo ("Luongo") (collectively, "Plaintiffs") are in the

towing, storage, and salvage business, which includes removal, recovery, and transportation of

damaged or disabled vehicles.  (Compl. ¶ 14.)  Plaintiffs are also in the automobile repair and service business, and Luongo Towing is a Pennsylvania State Inspection authorized station. (Id. ¶ 15.)  Plaintiffs operate two "tow yards" located with Delaware County, as well as a fully-licensed automotive repair shop.  (Id. ¶ 16.)

As part of the Pennsylvania State Police's ("PSP"'s) emergency response and law enforcement duties, the PSP retains third-party, private towing companies to provide emergency towing and salvage services.  (Id. ¶ 17.)  The PSP maintains a list of approved towing and salvage service providers (the "PSP Approved List") and only providers who are approved by the PSP are eligible to respond to a PSP request.  (Id. ¶ 18.)  In order to become an approved provider, a towing company must, among other things, submit an application to the PSP that meets certain PSP criteria, and pass an inspection conducted by a PSP representative.  (Id. ¶ 19.) Once a towing company's application is approved, that company must comply with certain regulations on an ongoing basis in order to remain an approved provider.  (Id. ¶ 20.)  Luongo Towing is on the PSP Approved List, and has provided towing services to the PSP for over thirty years, and salvage services to the PSP for approximately twenty years.  (Id. ¶ 21.)  A significant portion of Plaintiffs' business is, has been, and continues to be derived from retention by the PSP to provide towing and salvage services.  (Id. ¶ 22.)

From July 26, 2013 to November 19, 2013, however, Plaintiffs were suspended from providing towing and salvage services to the PSP, allegedly in retaliation for Plaintiffs' submission of a complaint regarding the improper conduct of certain PSP troopers.  (Id. ¶ 23.) Specifically, on April 18, 2012, Luongo submitted a detailed complaint to the local PSP office to be submitted to the Pennsylvania State Police Internal Affairs Division (the "IAD Complaint").

2

(<u>Id.</u> ¶ 24.)  The IAD Complaint reported the fact that Trooper Thomas Yates had utilized

Plaintiffs' automotive repair services, but refused to pay for such services and became hostile

when pressed for payment.  (<u>Id.</u> ¶ 26.)  Thereafter, Plaintiffs were advised that, whileTrooper

Yates and Trooper Louis Vitali were at a vehicle fraud conference, Trooper Vitali was overheard

to say to Trooper Yates, "this is how we can f**k Luongo."  (<u>Id.</u> ¶ 27.)  Trooper Yates then

appeared at the Aston Township, Delaware County Police Department, apparently posing as

Trooper Vitali, and asserted to Aston Police personnel that the PSP was changing certain policies

so as to have a negative effect on Plaintiffs' business and that the Aston Police should do the

same.  (<u>Id.</u> ¶ 28.)  Yates's conduct allegedly led to the Aston Chief of Police Daniel Ruggieri

sending a letter to the Pennsylvania State Police Bureau of Integrity and Professional Standards,

Internal Affairs Division, stating, among other things, that "during the past 2 years Mr. Luongo

has provided exemplary service to our community [and] I'm outraged that Trooper Yates

attempted to circumvent the chain of command by going to Sgt. Osborn in [an] effort to persuade

him to change our towing procedure which was put in place by my office."  (<u>Id.</u> ¶ 29.)

In addition to the above, various other instances of harassment by Troopers Yates and

Vitali against Plaintiffs were detailed in the IAD Complaint.  (<u>Id.</u> ¶ 30.)  Nonetheless, on June 11,

2012, Captain Timothy McDonald of the PSP responded to the IAD Complaint stating, "I am

unable to sustain your allegations [that] Troopers [Yates and Vitali] have conspired to interfere

with your business activities" and "while it is clear that Trooper Yates owes you some amount of

money . . . this was an informal transaction between you and Thomas Yates and . . . the amount

owed is in dispute."  (<u>Id.</u> ¶ 31.)  Captain McDonald indicated that no further administrative

action would be taken by the PSP in regard to the IAD Complaint.  (<u>Id.</u> ¶ 32.)

3

Around June 2013, Defendants Trooper Justin Lanza and Corporal Derrick Watford of the Philadelphia Fraud Unit of the PSP conducted an investigation of Plaintiffs' operation at both locations. (Id. ¶ 33.) Plaintiffs allege that the investigation was ordered by Sergeant Robert Reilly. (Id. ¶ 34.) Although Plaintiffs claim to have been in complete compliance with all applicable regulations at the time, the PSP asserted, based on its investigation, that Plaintiffs were not in full compliance. (Id. ¶¶ 35–36.) Via two letters issued on July 26, 2013, the PSP advised Mr. Luongo that he and Luongo Towing were being suspended from the PSP Approved List for 180 days. (Id. ¶ 37.) As to the Parkmount location, the letter indicated that the suspension was based upon an alleged failure to maintain a secure lot and to update fee schedules with the State Police. (Id. ¶ 40.) As to the Brooke Street location, the letter stated that the suspension was based on a failure to have a secure lot and update the fee schedule with the PSP, but also on the fact that Plaintiffs "knowingly failed to keep a currently registered emergency towing vehicle at the location." (Id. ¶ 39.) Plaintiffs allege, upon information and belief, that Defendant Captain James Raykovitz ordered the suspension. (Id. ¶ 38.)

Plaintiffs assert that none of the purported violations were a valid basis for suspension, which was imposed to punish and harass Plaintiffs in retaliation for submission of the IAD Complaint. (Id. ¶ 41.) Plaintiffs contend that the lots at both the Brooke Street and Parkmount locations were secure and had been regularly inspected by the PSP and approved for many years. (Id. ¶ 42.) Nothing about the security of Plaintiffs' lots had changed since the time of the submission of the IAD Complaint. (Id. ¶ 43.) In addition, Plaintiffs note that while they maintain a fleet of emergency towing vehicles at the Brooke Street location, they all happened to be actively out on towing calls at the time of the inspection. (Id. ¶ 44.) Finally, there was

4

purportedly no provision of the PSP field regulations or other governing regulations that requires a towing company to update fee schedules with the PSP, and Plaintiffs assert that their fee schedules at both locations were appropriate and in conformity with all industry standards. (Id. ¶ 45.)

As a result of the suspension, Plaintiffs retained an attorney in order to seek reinstatement. (Id. ¶ 47.) Plaintiffs commenced an action seeking injunctive and permanent relief with the Court of Common Pleas of Delaware County, styled Steve Luongo's Towing Inc. v. Pennsylvania State Police, Troop K, docketed at Civil Action Number 13-7414. (Id. ¶ 48.) Through their attorney, Plaintiffs negotiated at length with the PSP for reinstatement, were forced to reapply for approval for reinstatement, and were required to comply with regulations that allegedly were not applied to Plaintiffs' competitors. (Id. ¶ 50.)

Meanwhile, the alleged harassment continued, including an instance on September 20, 2013, in which Trooper Vitali appeared on the Luongo Towing yard and threatened to arrest Mr. Luongo unless Mr. Luongo permitted an individual to retrieve items from a vehicle that had been impounded at the request of Aston Police and was being stored on the Luongo Towing lot. (Id. ¶ 51.) Trooper Vitali further forced Mr. Luongo to move the impounded vehicle for the putative owner for free under threat of arrest, despite the fact that performing such vehicle-moving is usually done for a fee. (Id. ¶ 52.) Finally, after 115 days of suspension, and the expenditure of significant sums of money, Plaintiffs were reinstated to the PSP Approved List, as confirmed through two letters from Lieutenant Eric Turk, each dated November 19, 2013, advising that both of Plaintiff's locations, Brooke Street and Parkmount, were again deemed approved providers. (Id. ¶ 54.)

On July 23, 2015, Plaintiffs initiated the present action setting forth three causes of action as follows: (1) violation of First Amendment speech rights under 42 U.S.C. §§ 1983 & 1988; (2) violation of Fourteenth Amendment right to due process under 42 U.S.C. §§ 1983 & 1988; and (3) violation of the Fourteenth Amendment right to be free from unreasonable search and seizure under 42 U.S.C. §§ 1983 & 1988.  Defendants filed the current Motion to Dismiss on September 12, 2015.  Plaintiffs responded on October 19, 2015, and Defendants filed a Reply Brief on October 22, 2015, making the Motion ripe for judicial consideration.[1]

## II.     STANDARD OF REVIEW[2]

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss.  "First,

---

[1]  On November 3, 2015, Defendants also submitted a Notice of Recent Decision, attaching a case from the Western District of Pennsylvania addressing a factually analogous situation.  The Court considers this submission as well.

[2]  Defendants also rely on Federal Rule of Civil Procedure 12(b)(1) to move for dismissal of the PSP under the Eleventh Amendment.  Plaintiffs do not challenge that the PSP has sovereign immunity from the claims against it and, therefore, they stipulate to the PSP's dismissal from this action.  Accordingly, the Court grants Defendants' Motion to Dismiss all claims against the PSP without separately addressing the arguments raised in the Motion concerning that Defendant.

the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.  Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'") (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008).  The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233.  Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the

plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the

court must "determine whether, under any reasonable reading of the complaint, the plaintiff may

be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

### A.   Whether Plaintiffs' Due Process Claim Lacks the Requisite Protected Interest

In Count II of the Complaint, Plaintiffs allege that "Defendants, acting under color of law,

violated Plaintiffs' rights afforded under the Fourteenth Amendment by suspending Plaintiffs

from the PSP Approved List without affording Plaintiffs due process and an opportunity to be

heard." (Compl. ¶ 64.)  Plaintiffs go on to assert that Defendants acted intentionally and with

callous disregard of Plaintiffs' clearly established constitutional rights, and that, as a result,

Plaintiffs have suffered "severe and substantial damages."  (Id. ¶¶ 65–66.)  Defendants respond

that this claim must fail because Plaintiffs lack a protected interest that implicates the Due

Process Clause.

The Fourteenth Amendment of the Constitution forbids a state from depriving persons of

life, liberty, or property without due process of law.  U.S. Const. amend XIV, § 1.  When a

plaintiff sues under 42 U.S.C. § 1983 for a state actor's failure to provide procedural due process,

the court employs the "familiar two-stage analysis," Robb v. City of Philadelphia, 733 F.2d 286,

292 (3d Cir. 1984), inquiring (1) whether "the asserted individual interests are encompassed

within the fourteenth amendment's protection of 'life, liberty, or property;'" and (2) whether the

procedures available provided the plaintiff with "due process of law." Alvin v. Suzuki, 227 F.3d

107, 116 (3d Cir. 2000); see also Lomax v. U.S. Senate Armed Forces Serv. Comm., 454 F.

App'x. 93, 94–95 (3d Cir. 2011) (citing <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988)).

"A person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit[.]" <u>Perry v. Sindermann</u>, 408 U.S. 593, 601 (1972). "The plaintiff must demonstrate entitlement to a property interest created expressly by state statute or regulation or arising from government policy or a mutually explicit understanding between a government employer and an employee." <u>Carter v. City of Phila.</u>, 989 F.2d 117, 120 (3d Cir. 1993). In this case, the existence of a property right is an issue of state law. <u>Piecknick v. Commw. of Pa.</u>, 36 F.3d 1250, 1256 (3d Cir. 1994).

In <u>Piecknick v. Commonwealth of Pennsylvania</u>, the Third Circuit addressed a plaintiff's claim that he had a property interest protectible by the Due Process Clause in providing towing services near his business. <u>Id.</u> The plaintiff cited a guideline that stated that the Pennsylvania State Police Department would call service garages "nearest available to the scene on a rotational basis." <u>Id.</u> at 1256. The Third Circuit declined to find a protectible interest, noting that the guideline did not have the force of law and made no commitments to any particular service or zone. <u>Id.</u> The court then went on to consider "whether the guideline itself, or the parties' mutual understanding, is definite enough to create a property interest entitled to the constitutional protection of due process." <u>Id.</u> The court found that the plaintiff did not have an exclusive right to provide towing in Zone 1 because other towing services could be called if the plaintiff was not available and the towing guideline did not set aside an exclusive territory for any towing service. <u>Id.</u> at 1259. Further, the guideline's policy specifically contemplated the use of other services on a "rotational basis" and had no particular term for when a towing service would continue to get

assignments, making such a contract terminable at will.  Id.  Accordingly, the Third Circuit found

that the plaintiff had not alleged any property interest entitled to protection under the Due

Process Clause of the Fourteenth Amendment.[3]  Id.

Similarly, in Schlier v. Rice, 630 F. Supp. 2d 458 (E.D. Pa. 2007), the Court addressed

whether the right to perform towing services for the Pennsylvania State Police was a protectible

interest.  Id. at 475.  The plaintiff had a towing business and was on the State Police's approved

towing referral lists.  Id. at 462.  Under State Police regulation FR 6-2, troop commanders had

the authority to suspend towing operators from the referral lists for a number of reasons.  Id.

Disputes developed between the plaintiff and the State Police regarding billing and the plaintiff

had a series of conversations with his state representative about his troubles getting paid for his

towing operations.  Id. at 462–63.  In response to a price that the Police thought exorbitant and a

complaint filed against plaintiff's towing company by another company, alleging deceptive

practices by the plaintiff, the State Police decided to no longer use the plaintiff's services

exclusively but to instead seek out the best price each time towing services were needed.  Id. at

463.  The plaintiff called the captain to complain and eventually filed a formal complaint with

internal affairs.  Id.  Subsequently, the captain informed the plaintiff that his company would be

---

[3] Plaintiffs attempt to factually distinguish Piecknick by arguing that, in that matter, the Plaintiff was not entirely removed from the state police towing list, but rather was merely rotated with another towing company.  In the present case, however, Plaintiffs were entirely banned rom all towing work with no notice or opportunity to be heard, which constituted "substantial interference" with pursuing the occupation of towing.

Plaintiffs' efforts fail to distinguish their circumstances from the essential proposition of Piecknick that a plaintiff must demonstrate entitlement to a property interest created by either an express state statute or regulation, a government policy, or a mutually explicit understanding. Absent one of these, no property interest can exist.  Moreover, although Plaintiffs performed a lot of towing work for the state, they remained free to pursue private business.  As such, their removal from the Approved List did not substantially interfere with the occupation of towing.

removed from all towing referral lists based on various factors.  Id.  Eventually, the plaintiff

brought suit alleging, in part, a Fourteenth Amendment claim.  Id. at 475.  He claimed that

because FR 6-2 enumerated valid reasons to suspend towing operators, it created a "for cause"

standard for the suspension or removal of operators.  Id.  He asserted that his compliance with the

State Police's requests to take certain actions as part of the application procedure constitute

consideration as a matter of contract law, entitling them to a property interest in remaining on the

referral lists.  Id.  Plaintiff further alleged that his right to due process under the Fourteenth

Amendment was violated because he was removed from the PSP lists without an opportunity to

be heard on the matter.  Id.

The court granted summary judgment on this claim, finding that Plaintiff did not have a

property interest in remaining on the referral lists.  First, it noted that the regulation, FR 6-2, was

an internal guideline adopted by the State Police as to who should be contacted for towing calls

and was not a regulation with the force of law.  Id. at 475.  Moreover, the court remarked that FR

6-2 did not provide for fairness and equal opportunity for service providers, as its purpose was

"to provide necessary assistance to individuals in need in a timely, efficient, and safe matter," not

to protect the business interests of towing service providers.  Id. at 476.  Although the regulation

stated that suspension from the referral list should not exceed three years, the regulation did not

provide for any kind of hearing.  Id.  Finally, the court indicated that, under jurisprudence from

the Eastern District of Pennsylvania, "[o]nly those public contracts involving 'extreme

dependence' or 'permanence' rise to a protected status.'"  Id. at 477.  Ultimately, the court held

that "[e]xtreme dependence and permanence are not present here, and more important, the

contractual dispute underlying this action suggests that no mutual understanding between

Plaintiffs and the PSP existed that would create a protected property interest."  Id.

In the analogous case of Swinehart v. McAndrews, 221 F. Supp. 2d 552 (E.D. Pa. 2002), the plaintiff, an elected county constable, brought a § 1983 action against a state court judge and state court administrator, alleging that these defendants violated his procedural and substantive due process rights when they issued a directive to all state trial court judges in the county instructing them not to give additional assignments to the plaintiff to serve warrants.  Id. at 554. The plaintiff did not identify any statutory or regulatory authority that granted him the right to receive work from the Bucks County Court of Common Pleas.  Id. at 558–59.  Moreover, the plaintiff could not show any mutually explicit understanding that would provide the basis for a property interest in receiving work from the district.  Id.  Although the court agreed that the actions of the defendants "obviously impacted plaintiff in a significant manner," such actions "did not attempt to exert any supervision over a constable, and only controlled the conduct of the officers of the district."  Id. at 559.  The court concluded that while the directive issued by the defendant judge may have made it more difficult for the plaintiff to secure work from other sources, it did not deprive the plaintiff of any property interest without due process of law.  Id.

In the present case, Plaintiffs do not cite to any explicit regulation granting them a right to remain on the towing list and thus effectively concede that there is none.  Rather, they rely on the language in Piecknick allowing for the finding of a protected interest based on a sufficiently definite "mutual understanding" in Plaintiffs' right to provide towing service.  They go on to assert that "the process by which Plaintiffs were suspended from the Approved Services List bears all of the indicia of a mutual understanding."  (Pl.'s Resp. Opp'n Mot. Dismiss 11.) Specifically, they contend that prior to suspending Plaintiffs, Defendants held an official

investigation of Plaintiffs' business, made specific findings regarding compliance with departmental regulations, and issued a formal suspension from the PSP Approved List, which included specific criteria and process of reinstatement.  (Id.)  Finally, Plaintiff contends that, in the investigative report, Defendant Lanza specifically referred to PSP's relationship with PSP as a "contract."  (Id.)  According to Plaintiffs, had there been no such expectation or understanding, the PSP could have simply ceased using Plaintiffs' services without any reason.

Similar to the foregoing, factually-analogous cases, however, these arguments simply do not raise any plausible property interest of which Plaintiffs were deprived by Defendants.  As noted above, no state statute or regulation gives Plaintiffs any interest in remaining on the Approved Services List.  Moreover, although Plaintiffs had an interest in remaining on that list, there was no explicit mutual understanding that Plaintiffs would remain on the list, as evidenced by the absence of any procedural protections on this understanding, such as a public hearing and the right to appeal.  The mere fact that Defendants granted Plaintiffs some process in suspending them from the List does not mean that Defendants were required to do so, or that by granting Plaintiffs some type of hearing, Defendant created a property interest.  In addition, a non-decisionmaker's use of the term "contract" when referring to Plaintiffs' presence on the Approved List—a statement made in the investigative report by Trooper Lanza—does not automatically convert Plaintiffs' desire to remain on the List into an explicit mutual understanding between Plaintiffs and the PSP.  Finally, Plaintiffs have failed to allege the existence of any enforceable contract to receive any towing business at all, thereby making it too vague to create any property interest.  As noted in Piecknick, even if a contract with the PSP could be implied, contracts for services having no specific term are terminable at will.  36 F.3d at

13

1259; see also Dee v. Borough of Dunmore, 549 F.3d 225, 231 (3d Cir. 2008) (holding that the plaintiff would have a property right if she had an employment contract that allowed termination only for just cause).  In addition, "[o]nly those public contracts involving 'extreme dependence' or 'permanence'"—circumstances not at issue here—"rise to a protected status."[4]  Schlier, 630 F. Supp. 2d at 477.

The liberty interest in employment that is protected by the Due Process Clause is fairly narrow.  Novak v. City of Pittsburgh, No. Civ.A.05-897, 2006 WL 3420959, at *4 (W.D. Pa. Nov. 27, 2006).  While individuals have the right to work for a living in the common occupations of the community, "[t]he Constitution only protects this liberty from state actions that threaten to deprive persons of the right to pursue their chosen occupation.  State actions that exclude a person from one particular job are not actionable in suits . . . brought directly under the due process clause.  It is the liberty to pursue a calling or occupation, and not the right to a specific job, that is secured by the Fourteenth Amendment."  Piecknick, 36 F.3d at 1259–60 (internal quotations and quotation marks omitted).  While Plaintiffs' business in this case was clearly impacted by the decision to suspend them from the Approved List, Plaintiffs were not deprived of any property interest protected by the Due Process Clause.[5]

---

[4] Plaintiffs' assertion that the towing business represented a large part of their income does not rise to the level of extreme dependence given that Plaintiffs were free to engage in private repair and towing business.

[5] Plaintiffs assert the issue of whether there was an explicit mutual understanding between the parties that would give rise to a property interest is a factual issue that is not proper for a motion to dismiss.  The foregoing jurisprudence, however, eschews any such principle and holds that this inquiry is a question of law.  Piecknick, 36 F.3d at 1256.  Even construing every allegation in the Complaint in the light most favorable to Plaintiffs, the Court cannot find any legal entitlement, protected by the Due Process Clause, to Plaintiffs' remaining on the Approved List.

Given the absence of on any protectible property interest, Plaintiffs' due process claim must fail.  Accordingly, this portion of the Motion to Dismiss is granted.

**B.**   **Whether Plaintiffs' First Amendment Retaliation Claim Fails Because Plaintiffs Lack a Protected First Amendment Activity**

Defendants next seek dismissal of Plaintiff's First Amendment retaliation claim because Plaintiffs have allegedly failed to establish that the speech at issue was a matter of public concern.  Plaintiffs respond that, unlike public employees, whose speech is protected only if it involves a matter of public concern, they are private citizens seeking government redress and, thus, need not speak on matters of public concern in order to invoke the protections of the First Amendment.  In addition, they assert that even if they are deemed public employees, the speech at issue involved matters of public concern.  The Court addresses each argument individually.

In Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, 391 U.S. 563, 568 (1968), the United States Supreme Court recognized that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general."  Id. at 568.  To balance the "interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees," a court must perform a multi-part test.  Id.  A government employee claiming a violation of his or her First Amendment rights must show "(1) that [he] engaged in protected activity; (2) that the government responded with retaliation; and (3) that the protected activity was the cause of the retaliation."  Estate of Smith v. Marasco, 318 F.3d 497, 512 (3d Cir. 2003) (citing Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997)).  A public employee has a

constitutional right to speak on matters of public concern without fear of retaliation.  Rankin v.

McPherson, 483 U.S. 378, 383–84 (1987); Feldman v. Phila. Hous. Auth., 43 F.3d 823, 829 (3d

Cir. 1994) ("A state cannot lawfully discharge an employee for reasons that infringe upon that

employee's constitutionally protected interest in freedom of speech.").  Ultimately, a public

employee's statement is protected by the First Amendment when, "(1) in making it, the employee

spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government

employer did not have 'an adequate justification for treating the employee differently from any

other member of the general public' as a result of the statement he made."  Hill v. Borough of

Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418

(2006)).  It is for the Court, not the jury to perform the Pickering balancing test.  Baldassare v.

State of N.J., 250 F.3d 188, 195 (3d Cir. 2001).

"[T]he speech of a private citizen generally enjoys broader protections than the speech

of public employees or public contractors."  Glover v. Mabrey, 384 F. App'x 763, 768 (10th Cir.

2010).  Although the status of independent government contractors under the First Amendment

was originally unclear, the Supreme Court has expressly held that a public contractor is akin to a

government employee under the First Amendment and that a retaliation claim based on his or her

criticism of the contracting government agency is protected activity if it can pass the "Pickering

balancing test, adjusted to weigh the government's interests as contractor rather than as employer

. . . ."  Bd. of Cnty. Comm'rs v. Umbehr, 518 U.S. 668, 673 (1995).  In other words, independent

contractors with the government—as Plaintiffs are here—are protected by the First Amendment

and are treated similarly to public employees for purposes of First Amendment retaliation claims.

Id.  "Thus, to pass the first hurdle, [a public contractor plaintiff] must allege its speech involved

a matter of public concern."  Glover, 384 F. App'x at 769; see also Ervin and Assocs., Inc. v. Dunlap, 33 F. Supp. 2d 1 (D.D.C. 1997).

Plaintiffs' contrary arguments carry no weight.  First, they contend that they are not agents of employees of the Commonwealth as revealed by the fact that they are not entitled to insurance coverage, a pension, or any other benefits afforded public employees of the State.[6]  As noted above, however, Defendants do not contend that Plaintiffs are *employees* of the Commonwealth, but rather claim that they are public or independent contractors, which are subject to the same First Amendment restrictions—a proposition well supported by controlling jurisprudence.  Second, Plaintiffs assert that the contention that they are public employees is completely at odds with Defendants' due process argument—that the towing services provided by Plaintiffs are tenuous and subject to immediate termination with no notice or cause, and are not a protected interest.  This latter fact, however, has no bearing on First Amendment protections which recognize that "[d]eference is . . . due to the government's reasonable assessments of its interests *as contractor*."  Umbehr, 518 U.S. at 678 (emphasis in original).  As such, the First Amendment analysis does not turn on the distinction between a job protected by the Due Process Clause and an independent contractor relationship that is not so protected.  Finally, Plaintiffs make the confusing argument that the Supreme Court in Umbehr sought to expand First Amendment protections to independent contractors, not to restrict its protections to

---

[6]  Plaintiffs also contend that "Steve Luongo's Towing, Inc., is a corporation and could not conceivably be a 'public employee.'" (Pl.'s Resp. Opp'n Mot. Dismiss 14–15.)  The Supreme Court recently decided, however, that corporate entities are entitled to the protections of the First Amendment and should not be "treated differently under the First Amendment simply because they are not 'natural persons.'"  Citizens United v. Fed. Election Comm'n., 558 U.S. 310, 342 (2010).

"protected speech."  Again, this assertion is wrong.  The Supreme Court, in that case, concluded

that there is no "'difference of constitutional magnitude' . . . between independent contractors

and employees in this context.  Independent government contractors are similar in most relevant

respects to government employees, although both the speaker's and the government's interests

are typically—though not always—somewhat less strong in the independent contractor case."  Id.

at 684 (internal quotations omitted).  Therefore, the Court found that "the *same* form of

balancing analysis should apply to each."  Id. at 685 (emphasis added); see also Schiler v. Rice,

630 F. Supp. 2d 458, 465–66 (2007) (noting that "the Supreme Court has held that the line of

cases addressing retaliation against public employees based on political affiliation applied not

only to employees but also to independent contractors and to service providers who are 'removed

from an official list of contractors authorized to perform public services.'") (citing O'Hare Truck

Serv., Inc. v. City of Northlake, 518 U.S. 712, 714 (1996)).

Having concluded that Plaintiffs, as independent contractors of the Commonwealth, are

subject to the Pickering balancing test set forth above, it is now incumbent on the Court to

determine whether Plaintiffs' speech as alleged in the Complaint is a matter of public concern.

"Speech implicates a matter of public concern if the content, form, and context establish that the

speech involves a matter of political, social, or other concern to the community."  Miller v.

Clinton Cnty., 544 F.3d 542, 548 (2008).  "The content of the speech may involve a matter of

public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public

trust on the part of government officials.'"  Baldassare v. State of N.J., 250 F.3d 188, 195 (3d

Cir. 2001) (quotations omitted).  Notably, complaints—which do not seek to expose

discriminatory or harassing practices or policies, but complain solely about the speaker's own

abuse and mistreatment by superiors and/or co-workers—are not a matter of public concern.  Bell v. City of Phila., 275 F. App'x 157, 159 (3d Cir. 2008).  Ultimately, the court must look at the content, form, and context of a given statement as revealed by the whole record in order to determine if speech addresses a matter of public concern.  Rankin v. McPherson, 483 U.S. 378, 384 (1987).  Whether the activity in question is protected by the First Amendment is a question of law.  Emigh v. Steffee, 442 F. App'x 660, 665 (3d Cir. 2011).

    In an instructive case, the Third Circuit considered the distinction between complaints about a matter of public concern and complaints about the speaker's own abuse and mistreatment by superiors.  In Miller v. Clinton County, 544 F.3d 542 (3d Cir. 2008), the plaintiff was employed as an Adult Probation Officer by the Clinton County Probation Office, which had a collective bargaining agreement with the County.  Id. at 545–56.  According to the plaintiff, one of her supervisors was ineffective and unprofessional, allegedly referred to probationers as "scum," and openly stated that they did not deserve the money that the Probation Office spent on them.  Id. at 546.  On January 22, 2006, the plaintiff wrote a letter to Judge Saxton expressing her dissatisfaction with the Probation Office, stating that, "the reason I am writing to you now is that I can no longer work under the stressful conditions which must endure since Mrs. Foresman has become my supervisor.  I have tolerated intimidation and hostility from Mr. Rosamilia numerous times throughout my employment with the county.  I know that you are friends with both of them and you may not appreciate my candor but I believe that the time has come to explain my position to the court."  Id.  The plaintiff also complained about Foresman suspending her  and indicated that they differed in philosophy on how probationers should be treated.  Id.  Judge Saxton fired Miller immediately after receiving her letter and she brought a suit alleging that she

was fired in retaliation for exercising her First Amendment rights.  Id.

The Third Circuit, relying on the Supreme Court's reasoning in Connick, held that the plaintiff's letter did not constitute protected activity.  It noted that her statements about the probation office being run ineffectively and her supervisor's lack of professionalism "undoubtedly refer[red] to matters of public concern."  Id. at 549.  The court remarked, however, that it could not "'cherry pick' something that may impact the public while ignoring the manner and context in which that statement was made or that public concern expressed."  Id. at 550.  It went on to note that, upon considering the entirety of the plaintiff's letter, it was obvious that "although a small portion of the letter touche[d] upon a matter of public concern, the context in which the statement occurs establishes that the speech is not protected.  Miller's letter focused upon her private grievances as an employee.  Her statements about the ineffective operation of the Probation Office, and her concerns about her supervisor's comments that the probationers are 'scum,' are collateral to the thrust of her complaint."   Id.  The declaration that she could not work under the stressful conditions of her office provided the context for all that followed.  Id.  "In that context, the brief references to an issue of public concern can hardly be interpreted as manifesting anything other than a multi-faceted personal 'gripe'" which "so minimizes any public concern in the subject of her expression as to tip the First Amendment balance in favor of her employer."  Id. 551.

In the recent, and even more factually analogous, case of O'Baker v. Allen, slip op., No. Civ.A.15-170 (W.D. Pa. Nov. 2, 2015), the plaintiffs were an individual and one of several towing companies on the Pennsylvania State Police Department's "emergency towing referral list," similar to the one at issue in this case.  Id. at 1–2.  At some point, the plaintiffs asked

Defendant Commandant Bradley Allen to change the way in which the list was utilized and to go

from a "rotation" policy to a "nearest available" policy, to which Allen responded that the

"rotation" policy was the easiest.  Id. at 2.  The plaintiffs said that that was not the "right policy"

and told Allen that they would be pursuing their legal rights.  Id.  Shortly thereafter, the

defendants informed the plaintiffs that their "heavy duty towing operations" would be suspended

for two months due to an issue with one of their vehicles and, as a result, the plaintiffs were

removed from the emergency towing referral list.  Id.  In response to the plaintiffs' claims of First

Amendment retaliation, the defendants delayed the suspension.  Id.  Thereafter, criminal charges

were brought against the plaintiffs alleging that they engaged in theft by unlawful taking,

tampering with public records, and executing documents by deception.  Id. at 3.  In light of those

pending charges, the plaintiffs were taken off the emergency referral list until a jury returned a

not guilty verdict.  Id.  The plaintiffs filed a complaint alleging that the removal from the list and

the criminal investigations were in retaliation for the discussion concerning the operation of the

emergency towing referral list.  Id.

        The District Court found that "the 'brush' with any matter of public concern was

"exceedingly slight."  Id. at 6.  While the type of referral policy used to clear accidents may very

well have impacted highway safety and towing efficiency, "it [was] clear that Plaintiffs neither

discussed nor contemplated these issues when speaking to Defendants."  Id.  Rather, the court

noted that the plaintiffs' speech "had all the trappings of a business negotiation," and "any matter

of public concern is mere serendipity."  Id. at 6–7.  Accordingly, the court held that the fact that

the plaintiffs' attempts to advocate their business interests brushed against a matter of public

concern did not elevate the plaintiffs' personal grievance to the status of protected speech.  Id.

21

The same holds true in this case.  While Plaintiffs' IAD Complaint undoubtedly touched on matters of public concern—improper and fraudulent conduct by state troopers—the Court cannot simply cherry pick these matters to deem the entire complaint a matter of public concern.[7] According to the allegations of the Complaint, Plaintiffs' IAD Complaint reported a matter of private dispute regarding Defendant Yates's refusal to pay for automotive repair services rendered by Plaintiffs.  The IAD Complaint also asserted that Defendants Yates and Vitali tried to get another Township to change its policies so as to have a negative effect on Plaintiffs' business.  At its heart, this IAD complaint was not intended to shed light on any actual wrongdoing or breach of public trust, but rather to express Plaintiffs' personal grievances against Officers Yates and Vitali.  Accordingly, the Court finds, as a matter of law, that the first part of the Pickering balancing test has not been established.

In short, absent a showing that Plaintiffs spoke on a matter of public concern, their First Amendment retaliation claim must fail.  Accordingly, the Court grants this portion of Defendants' Motion to Dismiss.[8]

---

[7] Plaintiffs' citation to Fryer v. Noecker, 34 F. App'x 852 (3d Cir. 2002) is inapposite.  In that case, the Third Circuit held that "[i] is important to note that the case law is very clear that matters are not disqualified from being matters of public concern simply because they touch on individuals and their desires."  Id. at 853–54.  Quite unlike that case, however, the IAD Complaint in this case did not simply touch on Plaintiffs' individual desires.  Rather, that complaint was wholly motivated by Plaintiffs' concern with not getting paid by Officer Yates, and only "brushed" on matters of public concern.

[8] Defendants also argue that the retaliation claim is not plausible because Plaintiffs have not shown either an adverse action by the alleged retaliator after or contemporaneous with the protected activity, or a causal connection between the Plaintiffs' protected activity and the retaliator's adverse action.  Having dismissed this claim on other grounds, the Court need not address this argument.

C.   **Whether the Claims Involving the Actions of Troopers Vitali and Yates Are Time Barred**

Defendants next contend that the actions of Troopers Vitali and Yates that led to the 2012 PSP internal affairs complaint are time barred because they occurred more than two years prior to Plaintiffs' present suit and because Plaintiffs were aware of the actions at the time of their own 2012 internal complaint.  Plaintiffs respond that their claims are not time barred because the harm for which they seek redress did not occur until July 26, 2013, and the Complaint in this case was filed on July 23, 2015.

A defendant may prevail on the statute of limitations at the motion to dismiss stage "if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir. 1975)).  Because 42 U.S.C. § 1983 does not contain a statute of limitations, courts look to 42 U.S.C. § 1988, which requires use of the statute of limitations for the state where the federal court sits, unless its application would conflict with the Constitution or with federal law.  Lake v. Arnold, 232 F.3d 360, 368 (3d Cir. 2000).  In Pennsylvania, the statute of limitations applicable to section 1983 suits is the two-year limitations period set forth for personal injury actions in 42 Pa.C.S. § 5524; see Montgomery v. DeSimone, 159 F.3d 120, 126 n.4 (3d Cir. 1998) (noting that courts should apply state statute of limitations applicable to personal injury torts).  "It is axiomatic that under federal law, which governs the accrual of section 1983 claims, 'the limitations period begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action.'"  Id. (quoting Genty v. Resolution Trust Corp., 937 F.2d 899, 919

(3d Cir. 1991)).

Plaintiffs' First Amendment retaliation claim against Defendants Yates and Vitali alleges that on April 18, 2012, Plaintiff Luongo submitted his IAD Complaint to the PSP reporting the allegedly improper actions of Troopers Yates and Vitali.  On June 11, 2012, following an investigation, Captain McDonald responded to the IAD Complaint stating that Plaintiffs' allegations could not be sustained and that no further administrative action would be taken by the PSP in regard to the IAD Complaint.  Plaintiffs now allege that their cause of action did not arise until they suffered harm—*i.e.*, suspension from the Approved Services List—on July 26, 2013. As they commenced this action on July 23, 2015, the claim is not time barred.

As set forth in detail above, however, any retaliation claim based upon Plaintiffs' filing of the IAD Complaint must fail because that document does not constitute "protected activity" for purposes of the First Amendment.  To the extent Plaintiffs allege some sort of injury from the denial of their IAD Complaint—a fact that is unclear from the Complaint—Plaintiffs knew or had reason to know of the injury by June of 2012.  Thus, any claim based on that alleged injury had to have been filed no later than June 2014, more than one year prior to the filing of the Complaint in this action.  As such, any claim against Defendants Vitali and Yates based on such injury must be dismissed.

### D.   Whether the Fourth Amendment Claim Against Defendant Vitali Fails to State a Claim

Count III of the Complaint alleges that "Defendant Trooper Vitali, acting under color of law, violated Mr. Luongo's due process rights afforded under the Fourteenth Amendment by forcing Plaintiff to permit access to Plaintiffs' property and to move an impounded vehicle

without payment all under the threat of arrest." (Compl. ¶ 68.) Specifically, on September 20, 2013, Trooper Vitali appeared on the Luongo Towing yard and threatened to arrest Mr. Luongo unless Mr. Luongo permitted an individual to retrieve items from a vehicle that had been impounded at the request of Aston Police and was being stored on the Luongo Towing lot. (Id. ¶ 51.) Trooper Vitali further forced Mr. Luongo to move the impounded vehicle for the putative owner for free under threat of arrest, despite the fact that performing such vehicle-moving is usually done for a fee. (Id. ¶ 52.) Defendants now argue that Defendant Vitali's verbal threat does not constitute a constitutional violation and, as such, this claim must be dismissed.

As a primary matter, Defendants correctly note that Plaintiffs' claim is appropriately analyzed under the Fourth Amendment, not the Fourteenth Amendment as set forth in the Complaint. In Albright v. Oliver, 510 U.S. 266 (1994), the Supreme Court held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process [through the Fourteenth Amendment], must be the guide for analyzing these claims.'" Id. at 273 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); see also Berg v. Cnty. of Allegheny, 219 F.3d 261, 268 (3d Cir. 2000) ("[W]hen government behavior is governed by a specific constitutional amendment, due process analysis is inappropriate."). Here, Count III of the Complaint asserts that Defendant Vitali violated the constitutional protection against unreasonable search and seizure by improperly threatening Plaintiffs with arrest if he did not perform services without payment. (Compl., Count III heading.) By its very terms, this claim sounds in the Fourth Amendment's proscription against unreasonable searches and seizures. See Brown v. SEPTA, 539 F. App'x 25, 27 (3d Cir. 2013) ("A Fourth Amendment

seizure occurs when someone is detained by means intentionally applied to terminate his freedom of movement.") (internal quotation marks omitted).  The substantive due process clause of the Fourteenth Amendment is not an appropriate source for wrongful seizure claims or false arrest claims.  See Ulitchney v. Ruzicki, 412 F. App'x 447, 452 n.7 (3d Cir. 2011) (noting that the plaintiff's unlawful seizure claim is more properly analyzed under the Fourth Amendment, and not the Fourteenth Amendment); Moyer v. Borough of N. Wales, No. 00–1092, 2000 WL 1665132, at *3 (E.D. Pa. Nov. 7, 2000) ("Substantive due process does not support a claim for malicious prosecution or false arrest.").

　　　　Properly analyzed under the Fourth Amendment, Plaintiffs' claim does not appear to state a plausible cause of action against Defendant Vitali.  The Fourth Amendment protects the rights to be free from unlawful search, unlawful seizure, and the use of excessive force.  U.S. Const. amend. IV (providing, in relevant part, that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . .").  To succeed on a Fourth Amendment claim, a plaintiff must show that the defendant's actions constituted a "search" or "seizure" within the meaning of the Fourth Amendment and were "unreasonable" under the circumstances.  Brower v. Cnty. of Inyo, 489 U.S. 593, 599 (1989).  It is well established that alleged threats to arrest, standing alone, cannot support a claim of excessive force in violation of the Fourth Amendment.  Shuey v. Schwab, No. Civ.A.08-1190, 2010 WL 479938, at *4 (M.D. Pa. Feb. 4, 2010) (citing Page v. Forry, No. Civ.A.09-581, 2009 WL 3109828, *2 (D. Del. Sept. 29, 2009) ("Verbal abuse and harassment does not rise to the level of a constitutional violation."); S.M. v. Lakeland School Dist., 148 F. Supp. 2d 542, 551 (M.D. Pa. 2001) (Fourteenth Amendment, which protects against excessive force between arrest

26

and conviction, does not protect from verbal abuse or harassment)).

Plaintiffs assert that Defendant Vitali did not merely threaten to arrest Plaintiff Luongo, but rather entered Plaintiffs' property uninvited, demanded that he perform services without payment, and threatened to arrest Luongo if he did not—actions that, when considered together, constitute a violation of Plaintiffs' Fourteenth Amendment due process rights.  Plaintiffs have failed, however, to address whether these actions constitute a violation of the Fourth Amendment.[9]  Defendants, on the other hand, concede that the threat of arrest in order to carry out a theft by unlawful taking could constitute a violation of the Fourth Amendment, but argue that the allegations are insufficient to put forth a claim of theft by unlawful taking.

Given Plaintiffs' woefully insufficient pleading of this claim, accompanied by both parties' confusing briefing on the issue, the Court cannot determine whether Plaintiffs could sustain a claim on these grounds.  It is well established that if a complaint is subject to Rule 12(b)(6) dismissal, a district court must ordinarily permit a curative amendment unless such an

---

[9]  Plaintiffs rely heavily on the Third Circuit case of Abbott v. Latshaw, 164 F.3d 141, 147 (3d Cir. 1998).  Abbott, however, is inapposite as it was analyzed under the Fourteenth Amendment and involved a case where a private citizen enlisted the help of a constable to take a van from her former husband.  Id. at 144.  The constable went to the former husband's office and threatened him with arrest if he attempted to drive the van away.  Id.  The plaintiff did not allege an unlawful search and seizure against the constable, but rather asserted that the constable violated his right to procedural due process by failing to give him advance notice and an opportunity to be heard prior to his wife's seizure of the van.  Id. at 146.  It remarked that, "[v]iewing the record in the light most favorable to Abbott, we find that a reasonable jury could conclude that Diehl used his public authority to help Latshaw take possession of the van, and as such was obligated to notify Abbott of the seizure in advance and to provide him with a meaningful opportunity to be heard."  Id. at 147.
In this case, Plaintiffs do not allege that they were deprived of notice and meaningful opportunity to be heard prior to requiring Plaintiffs' services without payment.  Rather they assert that Vitali's threat to arrest Luongo, together with his forced presence on Plaintiffs' property and demand to undertake services and relinquish property to a third party, constitutes a clear violation of Plaintiffs' rights.  Accordingly, the Court does not find Abbott persuasive.

amendment would be inequitable or futile.  <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).

Plaintiffs make a specific request to amend Count III of their Complaint in order to correct

deficiencies in this cause of action.  Given this standard, the Court will grant Plaintiffs twenty

days in which to file a second amended complaint properly re-pleading Count III under the

Fourth Amendment as opposed to the Fourteenth Amendment.

## IV.    CONCLUSION AND LEAVE TO AMEND

In short, the Court finds that Plaintiffs' Complaint fails to state any claim upon which

relief may be granted.  First, all claims against the PSP are dismissed pursuant to the Eleventh

Amendment principle of sovereign immunity.  Second, with respect to Plaintiffs' due process

claim, Plaintiffs have failed to set forth a protected interest of which he was deprived.  Third, as

to the First Amendment retaliation claim, Plaintiffs' failure to plead any speech that is a matter of

public concern is fatal to this claim.  Fourth, any § 1983 claims arising out of the April 2012

actions of Troopers Vitali and Yates and the PSP's failure to act on Plaintiffs' IAD Complaint

are time barred.  Finally, Count III of Plaintiffs' Complaint, asserting that Defendant Vitali

violated Plaintiffs' due process rights, fails to state a cognizable cause of action.  While the Court

dismisses Count III without prejudice to Plaintiffs' right to file a second amended complaint, the

Court finds that any efforts to re-plead Counts I and II of the Complaint based on the factual

events giving rise to this suit are futile.  As such, these Counts are dismissed with prejudice.

An appropriate Order follows.